Hassan A. Zavareei (SBN 181547)
Email: hzavareei@tzlegal.com
TYCKO & ZAVAREEI LLP
1828 L Street, NW, Suite 1000
Washington, D.C. 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

Annick M. Persinger (SBN 272996)
Email: apersinger@tzlegal.com
TYCKO & ZAVAREEI LLP
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone (510) 254-6808
Facsimile (202) 973-0950

Beth E. Terrell (SBN 178181)
Email: bterrell@terrellmarshall.com
TERRELL MARSHALL LAW
   GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff Jamie Young*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE YOUNG, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>BANK OF AMERICA, N.A.,<br><br>                    Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

-1-
CLASS ACTION COMPLAINT

Plaintiff Jamie Young, through her undersigned attorneys, on behalf of herself and all persons similarly situated, brings this Class Action Complaint against Defendant Bank of America, N.A. ("BofA" or "Defendant"), and in support alleges as follows:

## INTRODUCTION

1.      Plaintiff Jamie Young has not had an account with Bank of America since October 2017, when she closed an account she had opened with them in or around February 2011. Since closing that account, Plaintiff has not had any contact with Bank of America.

2.      Nevertheless, on September 15, 2018, nearly a year after terminating her customer relationship with BofA, Plaintiff's cell phone rang, indicating that she had received a text message. The text message stated that BofA had received a request from her for a code:

> BofA: Your requested code is 213162. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

This text message was followed by eight identical messages on October 3, 2018, October 20, 2018, November 6, 2018, November 23, 2018, December 12, 2018, December 29, 2018, January 15, 2019, and February 2, 2019.

3.      These text messages invaded Plaintiff's privacy and subjected her to aggravation. This aggravation was exacerbated by BofA's persistent refusal to respond to her repeated inquiries regarding the unauthorized text messages she received.

4.      By sending unauthorized text messages to Plaintiff and similarly situated individuals, BofA violated federal law and caused them concrete harm, not only in the form of the frustration

CLASS ACTION COMPLAINT

and invasion of privacy, but also in the form of payments made to cell phone service providers for the receipt of such wireless spam.[1]

5.      Accordingly, Plaintiff brings this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Bank of America in sending text messages to Plaintiff on her cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d).  Plaintiff and Class Members have suffered aggregate damages exceeding $5,000,000, exclusive of interest and costs, and the case is a class action in which any Member of the Class of Plaintiff is a citizen of a state different from any Defendant.

7.      This Court also has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331, pursuant to Defendant's violation of the TCPA.

8.      This Court has jurisdiction over Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in this State.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, where Plaintiff Young lives.

---

[1] Text messages are "calls" within the meaning of the TCPA. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *Legg v. Voice Media Group, Inc.*, 990 F.Supp.2d 1351, 1354 (S.D. Fla. 2014) ("These provisions [of the TCPA] apply with equal force to conventional telephone calls and text messages, as a text message qualifies as a 'call' within the meaning of the TCPA.").

**PARTIES**

10.     Plaintiff Jamie Young is a resident and citizen of Pacifica, San Mateo County, California.

11.     Defendant Bank of America is a national bank with its headquarters and principal place of business located in Charlotte, NC. Among other things, Defendant is engaged in the business of providing retail banking services to consumers. Defendant operates banking centers, and thus conducts business, throughout the State of California, including within this District.

**COMMON ALLEGATIONS OF FACT**

I.     **The TCPA**

12.     The TCPA exists to prevent communications like the ones described within this complaint. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13.     Congressional committees investigating the use of telecommunications technology found that legislation was necessary to prevent abusive telemarketing practices and protect consumers from invasions of privacy, harassment, and economic harm. The Senate Committee on Commerce, Science, and Transportation found that "the Federal Communications Commission (FCC) received over 2,300 complaints about telemarketing calls" in the year preceding the TCPA's passage, stating *inter alia* that "unsolicited calls placed to . . . cellular . . . telephone numbers often impose a cost on the called party (. . . [where, e.g.] cellular users must pay for each incoming call . . .)." *See* S. Report No. 102-178, 1991 U.S.C.C.A.N. 1968, 1991 WL 211220 at *2 (Oct. 8, 1991). The House Committee on Energy and Commerce concurred, finding that "expert testimony, data, and legal analyses comprising the Committee's record, and broad support of consumers, state

-4-
CLASS ACTION COMPLAINT

regulators, and privacy advocates clearly evidence that unsolicited commercial telemarketing calls are a widespread problem and a federal regulatory solution is needed to protect residential telephone subscriber privacy rights." H.R. Report No. 102-317, 1991 WL 245201 at *18 (Nov. 15, 1991).

14.     When it passed the TCPA, Congress intended to provide consumers a choice as to how telemarketers may call them and found that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." Pub. L. No. 102–243, § 11. Congress also found that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls," and that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy . . ." *Id.* at §§ 12-13.

15.     The TCPA's ban on telephone calls made using an automatic telephone dialing system ("ATDS" or "autodialer"), as defined by 47 U.S.C. § 227(a)(1), has been interpreted to extend to unsolicited autodialed text messages sent to cellular phones. *E.g.*, FCC Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014); *Gager v. Dell Fin. Servs., Inc.*, 727 F.3d 265, 269 n.2 (7th Cir. 2013).

16.     As recently held by the United States Court of Appeals for the Ninth Circuit: "Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'" *Van Patten v. Vertical Fitness Grp.*, 847 F.3d 1037, 1043 (9th Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

-5-
CLASS ACTION COMPLAINT

## II.     Bank of America Sends Unsolicited Text Messages en Masse to Cellular Phones

17.     Bank of America provides banking services to millions of consumers across the country, including throughout the state of California. BofA's website advertises that, as a courtesy to consumers, it offers a variety of security measures to "keep online banking secure." One of these security measures is the "one-time authorization code option," which BofA describes as follows:

> After you opt for extra security at sign-in (you can do so from your Security Center in Online Banking), you'll receive a one-time authorization code through a text or email each time you sign into Online Banking. The code can only be used once and will expire within 10 minutes after it is sent. Your ability to receive and enter the code helps verify your identity.[2]

18.     Unfortunately, in addition to sending one-time authorization codes to customers who have requested them, BofA invades the privacy and security of others by sending them text messages they have not agreed to receive.

19.     Oftentimes, BofA sends these unauthorized text messages without ever having had any direct communication with the recipients.

20.     BofA's customer enrollment, account creation, and account administration processes do not include procedures necessary to confirm the accuracy of the information BofA collects and maintains, including customers' cellular telephone numbers. As a result, BofA routinely sends unsolicited text messages to individuals who are not its customers and who never provided consent to receive text messages from BofA.

21.     BofA sends its text messages using short codes, including the short code 739-81. A short code is a special number used for text messages sent to cellular subscribers. Short codes are unique 5- or 6-digit numbers that are obtained from an independent agency that manages and

---

[2] *See Online and Mobile Banking FAQs*, Bank of America, *available at* https://www.bankofamerica.com/privacy/faq/online-banking-faq.go (last accessed April 18, 2019).

assigns these numbers in the United States. Companies generally use short codes to communicate with large numbers of cellular subscribers.

22.     These text messages come in the form of Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

23.     An "SMS message" is a text message directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message is successfully made, the recipient's cell phone rings, alerting him or her that a text message is being received.

24.     Upon information and belief, BofA utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by BofA have the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the text message is sent, and to dial such numbers, en masse, in an automated fashion and without human intervention.

25.     The systems utilized by BofA to transmit the subject text messages also stores numbers and dials them automatically to send text messages to a stored list of phone numbers as part of scheduled campaigns. *See Marks v. Crunch San Diego*, *LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

26.     The impersonal and generic nature of BofA's text messages, *see* Ex. 1,[3] demonstrates that BofA utilized an ATDS in transmitting the messages. *See Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where

---

[3] Attached hereto at <u>Exhibit 1</u> is a photograph of the text messages that Plaintiff Young received from BofA.

CLASS ACTION COMPLAINT

messages were advertisements written in an impersonal manner and sent from short code); *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS).

27.     BofA sent the text messages via an ATDS or autodialer as defined by 47 U.S.C. § 227(a)(1). The ATDS has the capability to both (1) store or produce telephone numbers to be texted using a random or sequential number generator, and (2) automatically send text messages from a list or database of telephone numbers, without human intervention.

28.     BofA has a corporate policy of using an ATDS to text individuals, just as it did to Plaintiffs' cellular telephones in this case.

29.     Indeed, dozens of individuals have publicly complained online regarding these unsolicited text messages.  These complaints span nearly seven years:[4]

> **2012 complaint:**  I'm not sure if Bank of America is aware of this, but I have been (and possibly others) have been receiving text messages stating to be from BOA advising for card members to call a number.

> **2015 complaint**: … just got a text … telling me there was a security code requested by me, and if this is not true, call the number. I was like, I don't have an account with BOA!

> **2017 complaint**: This is what it looks like from phone number 73981: Bank of America: 275118 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

> **2017 complaint**: Received a text message from the number: 504-233-0103. The text said: 692632 Bank of America: 958340 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

---

[4] All complaints cited in this section appear on a Facebook thread relating to this issue, available at https://www.facebook.com/BankofAmerica/posts/im-not-sure-if-bank-of-america-is-aware-of-this-but-i-have-been-and-possibly-oth/407730532614522/ (last accessed April 18, 2010).

> **2018 complaint**: I received this text today. Note that I DO NOT do any business whatsoever with BOA due to previous horrific experiences. Bank of America: 478833 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

> **2018 complaint**: I just received the same message to my direct office line which is not associated at all with my account. It was in spanish (which I don't speak) and said that my authorization code expires in 10 minutes and that I should call 1-800-933-6262 if I did not request the code.

> **2018 complaint**: Message came from 66952...."021575 is your authorization code which expires in 10 minutes. if you didn't request the code, call 1-800-933-6262 for assistance"

> **2019 complaint**: I just received a text from "BofA" and I don't even have an account with you! It's a "requested" code number. There was a phone number as well but I was afraid to call for fear of fraud.

> **2019 complaint**: Just got the same text last night, and I haven't had a BofA account since 2002

> **2019 complaint**: got a text just now giving me a code that "i requested" says to call if I did not request the code

> **2019 complaint**: My husband just received a text this morning with the code of 5077536 to use when calling the ph. number 800 933-6262.

30.     Several Facebook posters note that, when they contacted BofA about the unauthorized text messages they received, they were told that, while (800) 933-6262 was in fact a legitimate BofA phone number, BofA was unsure why they had received these texts:

> **2018 complaint**:  This is strange because I got a text from BofA giving me an authorization code and if I did not request it (I didn't) to call 800-933-6262. I did so and entered the last 4 of my debit. Then it just sounded fishy so I hung up. I logged into my BofA and called their 1.800.432.1000 number. I was transferred to their mobile and online banking center in upstate NY. _I was told that the 6262 number is for their center and it is legit._ They checked all login attempts and nothing was out of the ordinary. _They weren't sure why I got the text but just keep monitoring my account. That's an "Answer without an answer" if you ask me._

CLASS ACTION COMPLAINT

> **2019 complaint**: My husband received a text alert and called the number. I called a different B of A number and *they said the 800.933.6262 number is legit, but there was no problem with our account. Very nice lady said that it could have been someone typing in a wrong number on their end*, but it sure gave us a scare. Needs to be another way do this.

31.     BofA's website confirms that 800.933.6262 is the number associated with their Text Banking Support department:

> To turn off Text Banking, sign in to Online Banking and select the Mobile settings link from the Profile & Settings menu and scroll to the Text Banking settings section of the page. **You can also call 800.933.6262**.[5]

32.     When 800.933.6262 is called, a recording plays that identifies the call recipient as BofA.

33.     BofA is undoubtedly aware of the issue and has been for several years. This is evidenced by the fact that its official Facebook account has publicly responded to over a dozen online complaints over the course of the past six years, most recently just sixteen weeks ago.[6] Several of BofA's responses imply that these text messages are simply phishing attempts from an entity or entities impersonating BofA, but (i) do not explain the basis for this belief, (ii) clarify why a phishing message would contain a real Bank of America phone number or the explicit warning "[d]on't share the code with anyone," or (iii) explain why the messages describe an authorization

---

[5] *See Mobile and Text Banking Customer Service*, Bank of America, *available at* https://www.bankofamerica.com/customer-service/contact-us/mobile-banking/ (last accessed April 18, 2019).
[6] *See* Facebook thread relating to this issue, available at https://www.facebook.com/BankofAmerica/posts/im-not-sure-if-bank-of-america-is-aware-of-this-but-i-have-been-and-possibly-oth/407730532614522/ (last accessed April 18, 2010).

code that expires in ten minutes just like the "one-time authorization code option" described on its website. [7]

34.     BofA's text messages were intentionally sent to Plaintiff and the other Members of the Class defined below. On information and belief, BofA is well aware of the TCPA's prohibitions against use of autodialers in calls and text messages to consumers but made the business decision to send these text messages anyway.

### III.     Plaintiff Jamie Young Received Multiple Unsolicited Text Messages from Defendant

35.     Plaintiff Jamie Young has not had an account with Bank of America since October 2017, when she closed an account she had opened with them in or around February 2011.

36.     Since closing that account, Plaintiff has not had any contact with Bank of America. She has not sought to open a new account with BofA, nor has she made any inquiries or requests related to her closed account.

37.     Nevertheless, on September 15, 2018, nearly a year after terminating her customer relationship with BofA, Plaintiff's cell phone rang, indicating that she had received a text message from the number 739-81. The text message stated that BofA had received a request from her for a code:

> BofA: Your requested code is 213162. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

This text message was followed by eight identical messages on October 3, 2018, October 20, 2018, November 6, 2018, November 23, 2018, December 12, 2018, December 29, 2018, January 15, 2019, and February 2, 2019.

---

[7] Phishing is the fraudulent practice of sending messages purporting to be from a reputable entity in order to induce individuals to reveal personal information.

38.     On or around January 16, 2019, Plaintiff Young called Bank of America's regular help line in an attempt to communicate to them that she did not have an account with BofA and clarify that she was not the intended recipient of the text message. The customer service representative she spoke to confirmed that she did not have an account with BofA, and told her that she would have to call the fraud department in order to get the issue resolved. She hung up and did so immediately, but the fraud department was closed at the time. She called back multiple additional times over the next several weeks, but was ultimately unable to speak to a human being.

39.     On February 2, 2019, Plaintiff received another text from BofA. Two days later, on February 4, 2019, she called the fraud department once last time during regular business hours, and sat on hold for almost thirty minutes before giving up.

40.     At no time did Plaintiff provide consent, including any written consent, to receive the above-reference text messages or any other such wireless spam from Bank of America, its agents, or partner entities.

41.     The automated text messages that Bank of America sent to Plaintiff were to a phone number for which Plaintiff is charged for incoming calls and text messages pursuant to 47 U.S.C. § 227(b)(1)(A)(iii). The last four digits of Plaintiff's phone number are "3812."

42.     The text messages originated from telephone number 739-81, a number which upon information and belief is owned and operated by Bank of America, and which is listed in an online directory as being associated with Bank of America.[8]

43.     This number is known as a "short code," a standard 5-digit code that enables Bank of America to send SMS text messages en masse, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

---

[8] *See* https://usshortcodedirectory.com/directory/?fwp_short_code_search=73981.

44.     Plaintiff alleges that the text message she received from Bank of America violated 47 U.S.C. § 227(b)(1).

## **CLASS ACTION ALLEGATIONS**

45.     Plaintiff proposes the following Class definition, subject to amendment as appropriate:

> All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express consent. Defendant and its employees or agents are excluded from the Class.

46.     Members of the Class are so numerous that joinder is impracticable. While the exact number of Class Members is unknown to Plaintiff, it is believed that the Class is comprised of thousands of Members geographically disbursed throughout the United States. The Class is readily identifiable from information and records in the possession of BofA and third parties.

47.     Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common and legal factual questions include:

a.     Whether Defendant's conduct violates the TCPA;

b.     Whether Defendant's text messages were sent for an emergency purpose;

c.     Whether Defendant obtained valid express consent from the automated text message recipients;

d.     Whether Plaintiff and Members of the Class are entitled to damages, costs, or attorneys' fees from Defendant;

e.      Whether Defendant's conduct caused Plaintiff and Members of the Class inconvenience or annoyance;

f.      Whether Plaintiff and Members of the Class are entitled to compensatory damages;

g.      Whether Plaintiff and Members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

h.      Whether Plaintiff and Members of the Class are entitled to a permanent injunction enjoining Defendant from continuing to engage in its unlawful conduct;

i.      Plaintiff's claims are typical of the Members of the Class as all Members of the Class are similarly affected by Defendant's actionable conduct. Defendant's conduct that gave rise to the claims of Plaintiff and Members of the Class (*i.e.* using an autodialer to send unsolicited text messages to cellular phones owned by Plaintiff and Members of the Class) is the same for all Members of the Class.

48.     Plaintiff will fairly and adequately protect the interests of the Class because she has no interests antagonistic to, or in conflict with, the Class that Plaintiff seeks to represent. Furthermore, Plaintiff has retained counsel experienced and competent in the prosecution of complex class action litigation.

49.     Class action treatment is a superior method for the fair and efficient adjudication of this controversy, in that, among other things, such treatment will permit a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for

obtaining redress on claims that might not be practicable to pursue individually, substantially

outweigh any difficulties that may arise in the management of this class action.

50.     Plaintiff knows of no difficulty to be encountered in the maintenance of this action

that would preclude its maintenance as a class action.

51.     Defendant has acted or refused to act on grounds generally applicable to the Class,

thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to

the Class as a whole.

### COUNT I

### Violation of the Telephone Consumer Protection Act (47 U.S.C. § 227 *et seq.*)

52.     Plaintiff incorporates by reference all above paragraphs as though fully repeated

herein.

53.     Plaintiff and the members of the class are, and at all times mentioned herein were,

"person(s)" as defined by 47 U.S.C. § 153(39).

54.     The text messages that Bank of America sent were not for an emergency purpose as

defined by 47 U.S.C. § 227(b)(1)(A)(i).

55.     The text messages from Bank of America also constitute artificial or prerecorded

voice calls pursuant to 47 U.S.C. § 227(b)(1).

56.     The TCPA prohibits the use of an ATDS or autodialer to make any call or send any

text message to a wireless phone number without the prior express consent of the contacted party or

in the absence of an emergency.

57.     The foregoing acts and omissions of Bank of America constitute numerous and

multiple violations of the TCPA, including but not limited to each and every one of the above-cited

provisions of  47 U.S.C. § 227 *et seq.*

58.     As a result of Bank of America's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class are entitled to an award of $500.00 in statutory damages for each and every negligent violation, pursuant to 47 U.S.C. § 227(b)(3).

59.     As a result of Bank of America's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class are entitled to an award of $1,500.00 in statutory damages for each and every knowing and/or willful violation, pursuant to 47 U.S.C. § 227(b)(3).

60.     As a result of Bank of America's violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and Members of the Class have been subjected to nuisance text messages, have been forced to waste time reviewing, deleting, and/or responding to Bank of America's unsolicited automated text messages, and have suffered invasions of their privacy and unwanted use of data storage space on their cellular telephones.

61.     Plaintiff and Members of the Class are also entitled to and seek injunctive and declaratory relief prohibiting Bank of America's illegal conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

A.     Statutory damages of $500.00 for each negligent violation of the TCPA over the last four years;

B.     Statutory damages of $1,500.00 for each knowing or willful violation of the TCPA over the last four years;

C.     Actual and punitive damages arising from Defendant's wrongful and illegal conduct;

D.     A permanent injunction prohibiting Defendant from sending text messages via the use of an ATDS or autodialer without recipients' prior express consent;

E.    Attorney's fees;

F.    Litigation expenses and costs of the instant suit; and

G.    Such other or further relief as the Court deems proper.

## **JURY DEMAND**

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Dated: July 3, 2019                                    Respectfully submitted,

                                                                  TYCKO & ZAVAREEI LLP

                                                                  By: /s/ Annick M. Persinger

                                                                  Annick M. Persinger (SBN 272996)
                                                                  Email:apersinger@tzlegal.com
                                                                  1970 Broadway, Suite 1070
                                                                  Oakland, CA 94612
                                                                  Telephone (510) 254-6808
                                                                  Facsimile (202) 973-0950

                                                                  Hassan A. Zavareei (SBN 181547)
                                                                  Email: hzavareei@tzlegal.com
                                                                  TYCKO & ZAVAREEI LLP 1970
                                                                  1828 L Street, NW, Suite 1000
                                                                  Washington, DC 20036
                                                                  Telephone (202) 973-0900
                                                                  Facsimile (202) 973-0950


                                                                  Beth E. Terrell (SBN 178181)
                                                                  Email: bterrell@terrellmarshall.com
                                                                  TERRELL MARSHALL LAW
                                                                  GROUP PLLC
                                                                  936 North 34th Street, Suite 300
                                                                  Seattle, Washington 98103
                                                                  Telephone: (206) 816-6603
                                                                  Facsimile: (206) 319-5450


                                                                  *Attorneys for Plaintiff Jamie Young*

— **EXHIBIT  1** —

Sep 15, 2018 at 5:15 PM



Bank of America: 213162 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

Sep 15, 5:15 PM

Oct 3, 2018 at 11:08 AM



Bank of America: 429799 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

Oct 3, 11:08 AM

Oct 20, 2018 at 4:04 PM



BofA: Your requested code is 870178. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

Oct 20, 4:04 PM

Nov 6, 2018 at 4:53 PM



BofA: Your requested code is 619221. Don't share the code with anyone - we

Enable Google Fi SMS to reply

Case 3:19-cv-03367-JSC   Document 1   Filed 07/03/19   Page 20 of 22

**< +173981**

Bank of America: 429799 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

Oct 3, 11:08 AM

Oct 20, 2018 at 4:04 PM



BofA: Your requested code is 870178. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

Oct 20, 4:04 PM

Nov 6, 2018 at 4:53 PM



BofA: Your requested code is 619221. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

Nov 6, 4:53 PM

Nov 23, 2018 at 5:25 PM



BofA: Your requested code is 679803. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262.

Nov 23, 5:25 PM

Enable Google Fi SMS to reply

2:33

739-81 ›

Text Message
Wed, Dec 12, 1:01 PM

BofA: Your requested code is 413744. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Sat, Dec 29, 5:29 PM

BofA: Your requested code is 495191. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Tue, Jan 15, 8:47 PM

BofA: Your requested code is 696104. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Sat, Feb 2, 5:13 AM

BofA: Your requested code is

Text Message

2:33

739-81 ›

with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Sat, Dec 29, 5:29 PM

BofA: Your requested code is 495191. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Tue, Jan 15, 8:47 PM

BofA: Your requested code is 696104. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Sat, Feb 2, 5:13 AM

BofA: Your requested code is 662197. Don't share the code with anyone - we won't call to ask for it. If you didn't request it, call us at 800.933.6262

Text Message