**TYCKO & ZAVAREEI LLP**
Annick M. Persinger (SBN 272996)
Maren I. Christensen (SBN 320013)
apersinger@tzlegal.com
mchristensen@tzlegal.com
1970 Broadway, Suite 1070
Oakland, CA 96612
Telephone (510) 254-6808
Facsimile (202) 973-0950

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC 20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

*Attorneys for Plaintiff Jamie Young*
*(Additional Counsel on Signature Page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)

| | |
|---|---|
| JAMIE YOUNG, on behalf of herself and all others similarly situated,<br><br>                      Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A.,<br><br>                Defendant. | Case No. 4:19-cv-3867-JST<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:        February 4, 2020<br>Time:       2:00 p.m.<br>Judge:     Hon. Jon S. Tigar<br>Courtroom:  6 (2nd Floor)<br><br>Compl. Filed:  July 3, 2019 |

Plaintiff Jamie Young ("Plaintiff") and Defendant Bank of America, N.A. ("Defendant" or "Bank of America"), the parties to the above-titled action (collectively, the "Parties"), jointly submit this Joint Case Management Statement pursuant to the Standing Order for All Judges of the Northern District of California and Civil Local Rule 16-9.

**1.      Jurisdiction & Service:**

Plaintiff filed her Complaint on July 3, 2019, and Bank of America was served on July 9. Bank of America appeared in this action on July 26, 2019 and filed its answer on August 29, 2019. No party has not been served.

Plaintiff alleges that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), which confers federal jurisdiction over class actions where: (a) there are 100 or more members in the proposed classes, (b) some members of the proposed classes have a different citizenship from Bank of America, and (c) the claims of the proposed class members are alleged to exceed the sum or value of five million dollars ($5,000,000) in aggregate. *See* 28 U.S.C. § 1332(d)(2), (6). This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves alleged violations of a federal statute, the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Plaintiff contends that this Court has personal jurisdiction over Bank of America, which regularly conducts and/or solicits business in, engages in other persistent courses of content in, and/or derives substantial revenue from products and/or services provided to persons in this district.[1] Plaintiff contends that venue is proper in this Court under 28 U.S.C. § 1391 because Plaintiff alleges that significant events giving rise to this case took place in this district.

//

//

//

---

[1] Bank of America denies that specific jurisdiction exists in this Court over the claim of putative class members who do not reside in California.  *See* Dkt. 18 [Answer] at 4.  However, Bank of America is cognizant that courts in this district have uniformly refused to apply *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) to dismiss nationwide class action allegations at the onset of litigation, and thus Bank of America preserved its ability to present such jurisdictional arguments in any class certification proceedings.  *Id.*, at 4, n. 2.

**2.      Facts**

      **(a)      Plaintiff's Contentions:**

Plaintiff brings this action for injunctive relief and statutory damages arising out of and relating to Bank of America's conduct in negligently, knowingly, and willfully contacting Plaintiff and class members on their telephones using an artificial or prerecorded voice without their prior express consent within the meaning of the TCPA.

Plaintiff Jamie Young has not had an account with Bank of America since October 2017, when she closed an account she had opened with them in or around February 2011. Since closing that account, Ms. Young has not had any contact with Bank of America. Compl. ¶ 1. Nevertheless, on September 15, 2018, nearly a year after terminating her customer relationship with Bank of America, Ms. Young's cell phone rang indicating that she had received a text message. *Id.* at ¶ 2. The text message stated that Bank of America had received a request from her for a code:

> BofA: Your requested code is 213162. Don't share the code with anyone – we won't call to ask you for it. If you didn't request it, call us at 800.933.6262.

*Id.* This text message was followed by eight identical messages on October 3, 2018, October 20, 2018, November 6, 2018, November 23, 2018, December 12, 2018, December 29, 2018, January 15, 2019. *Id.* The text messages, sent from  an automatic telephone dialing system ("ATDS"), as defined by the TCPA, originated from telephone number 739-81, a standard 5-digit "short code" that enables Bank of America to send SMS text messages en masse. *Id.* at ¶¶ 42-43 At no time did Ms. Young provide consent, including any written consent, to receive the above referenced text messages or any other wireless spam from Bank of America, its agents, or partner entities. *See e.g.*, *id.* at ¶ 40.

These text messages invaded Ms. Young's privacy and subjected her to aggravation. *Id.* at ¶ 3. This aggravation was exacerbated Bank of America's persistent refusal to respond to her repeated inquiries regarding the unauthorized text messages she received. *Id.*

And Ms. Young was not the only one who received unauthorized, aggravating text messages from Bank of America. Indeed, dozens of individuals have publicly complained online regarding these unsolicited text messages:

**2012 complaint:** I'm not sure if Bank of America is aware of this, but I have been (and possibly others) have been receiving text messages stating to be from BOA advising for card members to call a number.

**2015 complaint**: … just got a text … telling me there was a security code requested by me, and if this is not true, call the number. I was like, I don't have an account with BOA!

**2017 complaint**: This is what it looks like from phone number 73981: Bank of America: 275118 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

**2017 complaint**: Received a text message from the number: 504-233- 0103. The text said: 692632 Bank of America: 958340 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

**2018 complaint**: I received this text today. Note that I DO NOT do any business whatsoever with BOA due to previous horrific experiences. Bank of America: 478833 is your authorization code which expires in 10 minutes. If you didn't request the code, call 1.800.933.6262 for assistance.

**2018 complaint**: I just received the same message to my direct office line which is not associated at all with my account. It was in spanish (which I don't speak) and said that my authorization code expires in 10 minutes and that I should call 1-800-933-6262 if I did not request the code.

**2018 complaint**: Message came from 66952...."021575 is your authorization code which expires in 10 minutes. if you didn't request the code, call 1-800-933-6262 for assistance"

**2019 complaint**: I just received a text from "BofA" and I don't even have an account with you! It's a "requested" code number. There was a phone number as well but I was afraid to call for fear of fraud.

**2019 complaint**: Just got the same text last night, and I haven't had a BofA account since 2002

**2019 complaint**: got a text just now giving me a code that "i requested" says to call if I did not request the code

**2019 complaint**: My husband just received a text this morning with the code of 5077536 to use when calling the ph. number 800 933-6262.

*Id.* at ¶ 29; *see also id.* at ¶ 30 (consumers noting online that the (800) 933-6262 was in fact a legitimate Bank of America phone number, Bank of America was unsure why they had received the texts); *id.* at ¶¶ 31-32 (alleging that Bank of America's website confirms that the (800) 933-6262 number is associated

with their Text Banking Support department, and that when the number is called, a recording plays that identifies the call recipient as Bank of America).

As Ms. Young's and other individuals' experiences make clear, Bank of America's customer enrollment, account creation, and account administration processes do not include procedures necessary to confirm the accuracy of the information Bank of America collects and maintains, including customers' cellular telephone numbers. As a result, Bank of America routinely sends unsolicited text messages to individuals who are not its customers and who never provided consent to receive text messages from Bank of America.

Accordingly, Ms. Young brings this class action complaint for damages, injunctive relief, and any other available legal or equitable remedies resulting from the illegal actions of Bank of America in sending text messages to Ms. Young and similarly situated individuals on their cellular telephones, in violation of the TCPA, 47 U.S.C. § 227, *et seq.*

**(b)     Defendant's Contentions:**

Bank of America is one of the largest banks in the United States with over 60,000,000 (sixty million) customers within the United States.  Like most banks, Bank of America offers online banking services through which users can access their accounts after creating an online banking profile.  As a security measure, whenever someone attempts to access an online banking profile/account and that person's identity is in question, the system denies access until a one-time passcode/authorization code ("OPT") can be provided to verify the user's identity.  The system, then, prompts the user to select how he/she wishes to receive the OPT (for example, via a text or voice message to the primary user's phone number registered with Bank of America, or an email on file).  Only then, the system will send the OPT through the delivery method selected by the user.  In other words, OPT is a unique code, valid for a few minutes, sent to the primary user only after a request is made by an individual attempting to gain access to his/her account/banking profile to prevent fraudulent transactions or identity theft.

At issue in this case, are nine (9) text messages containing unique OPT verification codes sent to Plaintiff's cellular telephone number between September 15, 2018 and February 2, 2019, after requests were made to access her online banking profile with Bank of America.  The requests to access Plaintiff's

online banking profile triggered security concerns which prompted Bank of America to send the text messages at issue in this case to the cellular number previously provided by Plaintiff to Bank of America for communication purposes.   It is Bank of America's position that these text messages do not violate the TCPA because (1) the Bank had Plaintiff's prior consent for these communications, (2) the communications were necessary to protect the safety of Bank customers, and thus were emergency communications not restricted by the TCPA; and (3) the text messages were not sent using an automatic telephone dialing system ("ATDS"), as defined by the TCPA.[2]

Plaintiff created an online banking profile with Bank of America in July 2006 and opened a checking and savings account in May 2008.  Plaintiff closed her checking and savings account prior to September 2018 (when the first text message containing the OPT code was sent to her cellular number).  However, her online banking profile with Bank of America was not deleted and/or cancelled, and thus the cellular number which she provided to Bank of America for communication purposes and on which she received the text messages containing the OPT codes remained associated with her still-open online profile.

From September 15, 2018 through February 2, 2019, Bank of America received nine (9) login requests to access Plaintiff's online banking profile.  Each of these requests triggered Bank of America's fraud and identity theft alert system.  In response, Bank of America sent Plaintiff's cellular number nine (9) text messages providing Plaintiff with a unique OPT code to confirm her identity.  Each of these messages were sent to the number provided by Plaintiff to Bank of America for communication

---

[2] There are three elements to a TCPA claim brought under 227(b) for non-emergency calls: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Van Patten v. Vertical Fitness Grp., LLC*, 22 F.Supp.3d 1069, 1073 (S.D. Cal. 2014) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012)).  There is also an exception within 47 U.S.C. § 227 for calls made for emergency purposes. *See* 47 U.S.C. § 227(b)(1)(A).  Further, the statute clearly defines an ATDS as a system that can randomly/sequentially generate numbers and then dial them. *See* 47 U.S.C. § 227(a)(1) ("Definitions: As used in this section—(1) The term "automatic telephone dialing system" means equipment which has the capacity—(A) to store or produce telephone numbers to be called, **using a random or sequential number generator;** and (B) to dial such numbers.") (emphasis added).  Thus, TCPA liability for calls to cellular phones can only exist if calls are placed without the recipient's prior express consent and placed with prerecorded messaging or with an ATDS as defined by the statute, without the recipient's prior express consent. *See* 47 U.S.C. § 227(b).

purposes and were strictly limited to prevent fraud/identity theft (containing no advertisement or cross-marketing messages) and protect the safety of Plaintiff's personal information. Thus, Bank of America contends that the text messages received by Plaintiff are exempted under the TCPA because they were texts sent for an emergency purposes and moreover, were sent with Plaintiff's prior consent.

Bank of America also contends that the technology used to send the text messages to Plaintiff is not an ATDS defined by the TCPA because the text messages were not pre-recorded or sent to randomly/sequentially generated numbers. Rather, each of the text messages at issue here were unique (with a time-limited one-time passcode) and only sent to Plaintiff—they were not sent *en masse* or with identical messaging.[3]

Finally, Plaintiff's putative class action claims also fail. Citing to eleven (11) comments posted by unidentified users on a Facebook page over a seven-year period, Plaintiff alleges that other Bank of America customers also allegedly received unsolicited text messages containing OPT security codes. *See* Dkt 1, at 8, n. 4. However, Bank of America has no means of identifying the individuals who allegedly received the purported unsolicited text messages with the OPT codes to confirm the veracity of their postings, or the circumstances in which the alleged text messages were purportedly sent (and whether they were indeed unsolicited). Moreover, Bank of America notes that these hearsay Facebook postings are not verifiable facts about which Plaintiff has personal knowledge.

Lastly, as noted in footnote 1 above, because BANA's principal place of business and state of incorporation are not in California, BANA notes that Plaintiff's own specific jurisdiction for her claims

---

[3] Currently, there is a circuit split on what is an ATDS system as defined under the TCPA. Five circuits (D.C., Second, Third, Sixth, and as of yesterday, the Eleventh) have concluded that dialing systems that call/text only customer-provided numbers (like the one at issue in this case) are not ATDS systems as defined under the TCPA. *See ACA Int'l v. Fed. Commc'ns Comm'n,* 885 F.3d 687, 703 (D.C. Cir. 2018); *King v. Time Warner Cable Inc.,* 894 F.3d 473, 481 (2nd Cir. 2018); *Dominguez v. Yahoo, Inc.,* 894 F.3d 116, 121 (3rd Cir. 2018); *Gary v. TrueBlue, Inc.,* 786 f. App'x 555 (6th Cir. 2019) *Glasser v. Hilton Grand Vacations Co., LLC,* No. 18-14499, 2020 WL 415811, at *3, -- F.3d -- (11th Cir. Jan. 27, 2020). However, the Ninth Circuit has decided that any dialer that is capable of storing numbers is an ATDS. *See Marks v. Crunch San Diego, LLC,* 904 F.3d 1041 (9th Cir. 2018). The question of the nature of an ATDS as defined in the TCPA has been taken up by Facebook in an October 17, 2019 petition to the United States Supreme Court. As of the date of this filing, the Facebook petition is still pending. Bank of America is confident that once the Supreme Court examines the question (whether in the Facebook petition or another one), the *Marks* decision will no longer be the interpretation of "ATDS" that controls here.

in this foreign district cannot reach to her non-California putative class members so as to establish jurisdiction over their claims here as well. *See* n.1, supra.

Accordingly, Bank of America denies that it violated the TCPA, and that Plaintiff and/or the putative class members are entitled to damages, injunctive relief, and any other available legal or equitable remedies as a result of the text messages Bank of America sent to prevent fraud and/or identity theft.

**3.    Legal Issues**

**(a)    Plaintiff's Contentions:**

Plaintiff asserts one count against Defendant Bank of America for Knowing and/or Willful Violations of the TCPA.

**(b)    Defendant's Contentions:**

Bank of America denies that it negligently, knowingly and/or willfully violated the TCPA and identifies the following key legal issues in this case:

- Whether the communications to Plaintiff and/or the putative class members were placed in response to an inquiry or other established business relationship.

- Whether Plaintiff and/or the putative class members gave express written consent to receive the communications at issue.

- Whether Bank of America's communications to Plaintiff and/or the putative class were calls made necessary in a situation affecting the safety of consumers.

- Whether Bank of America's communications to Plaintiff and/or the putative class were placed with ATDS equipment, as that term is defined in the TCPA.

- Whether Bank of America's policies and procedures to comply with the TCPA act to prevent liability under Section 227(c).

- Whether Plaintiff and/or the putative class members have Article III standing to seek recovery under the TCPA for the complained-of communications.

- Whether the statutory damages sought on behalf of a nationwide class against Bank of America would constitute a violation of the Eighth Amendment.

- Whether the TCPA is constitutional under the First Amendment.

**4.     Motions**

    **(a)     Plaintiff:**

Plaintiff will move for class certification in accordance with the schedule set by the Court. Below, Plaintiff proposes a schedule for class certification.

Below, Bank of America requests that the Court stay this case in its entirety, *sua sponte*, pending the United States Supreme Court decision in *William P. Barr et al. v. American Association of Political Consultants, Inc.*, No. 19-361. First, Plaintiff submits that the Court should reject Bank of America's invitation to stay the case on its own. Instead, Bank of America should be required to make any motion to stay pursuant to the Federal Rules of Civil Procedure and the Northern District of California Local Rules. The proponent of a stay has the burden of proving such a discretionary stay is justified. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In deciding whether to stay proceedings pending a Supreme Court disposition in another case, courts consider "(1) the possible damage which may result from granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *McElrath v. Uber Technologies, Inc.,* Case No. 16-cv-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). Plaintiff requests that the Court decline to consider Bank of America's request for a stay unless and until it is supported by motion and fully briefed.

    **(b)     Defendant:**

On January 10, 2020, the United States Supreme Court accepted a petition for certiorari in *William P. Barr et al. v. American Association of Political Consultants, Inc.*, No. 19-361, in which the question of whether the TCPA is constitutional (in restricting some forms of speech and not others) is squarely at issue.  In *Barr*, the Fourth Circuit held that the government-debt exception to the automated-call restriction of the TCPA violates the First Amendment and held that the proper remedy was to sever the government debt exception, leaving the basic automated-call restriction in place.  The Supreme Court will now review both prongs of the *Barr* ruling to assess the constitutionality of Section 227(b), under

1  which Plaintiff asserts claims here, and thus Defendant believes that this case should be stayed pending

2  the resolution of *Barr* later this term.[4]  Should the Court not *sua sponte* stay this litigation to await the

3  decision at or before the Case Management Conference, Defendant will promptly file a Motion to Stay,

4  given that one of Bank of America's affirmative defenses arises from the First Amendment and that the

5  Supreme Court's determination on the *Barr* petition could resolve all disputes in this matter.  *See* Fifth

6  Affirmative Defense:  "All of the claims constitute an undue burden on speech and thus violate the First

7  Amendment of the United States Constitution."  [Dkt. 18, Ans, at Page 14 of 16.].

8      Should the case proceed, Defendant plans to file a Motion for Summary Judgment asserting at

9  least the following arguments: (1) text messages sent to Plaintiff are not actionable under the TCPA; (2)

10  Plaintiff lacks Article III standing to seek recovery under the TCPA for the text messages she received;

11  (3) the communications were not placed with an ATDS as defined by the TCPA; and (4) even if the

12  communications were placed with an ATDS, Plaintiff had provided her prior express written consent to

13  be contacted with such technologies and/or the texts were sent for emergency purposes.  Defendant

14  will also oppose any certification motion.

15  **5.    Amendment of Pleadings:**

16      No amended pleadings have been filed.  Discovery has not yet commenced, however, and

17  parties, claims, or defenses may be added as necessary.

18  **6.    Evidence Preservation:**

19      The parties agree to take reasonable and necessary steps to preserve evidence relevant to the

20  issues reasonably evident in this action.

21  **7.    Disclosures:**

22      The parties will make their initial disclosures pursuant to Rule 26(a)(1) by January 28, 2020.

23  **8.    Discovery:**

24      No formal discovery has been completed to date, and no discovery deadlines have yet been

25  established.  The Parties will negotiate an ESI protocol and a protective order.

26

27  _____

28  [4] Likewise, if the Supreme Court grants the Facebook petition as well, which raises the same constitutionality issue but also raises the Ninth Circuit's definition of "ATDS" equipment restricted by the TCPA, this case should be stayed pending its decision in that matter too.

1

**(a)     Plaintiff:**

2      Plaintiff does not believe that it is necessary to modify the limitations on discovery imposed by

3      the Federal Rules of Civil Procedure.

4      Plaintiff intends to seek discovery regarding, among other things: (1) all documents and

5      communications concerning Plaintiff; (2) all communications between Bank of America and Plaintiff;

6      (3) all documents concerning the hardware, software, or methodology used to store telephone numbers

7      of the intended recipient of the subject text messages; (4) all documents describing the hardware,

8      software, or methodology used to transmit the subject text messages; (5) all documents describing the

9      method or process by which the subject text messages were sent; (6) all documents concerning business

10     plans, memoranda, or meeting minutes that reference using text messages or automatic dialing systems

11     to contact persons and/or entities; (7) any and all written policies concerning Bank of America's

12     compliance with the TCPA, 47 U.S.C. § 227, *et seq.*; (8) any and all communications concerning the

13     TCPA, 47 U.S.C. § 227, *et seq.*; (9) all document, including any communications, concerning the creation

14     of or amendments to Bank of America's policies and procedures pursuant to the TCPA, 47 U.S.C. §

15     227, *et seq.*; (10) all documents concerning the training of personnel pursuant to the TCPA, 47 U.S.C. §

16     227, *et seq.*; (11) all communications to personnel regarding the transmission of text messages; (12) all

17     document identifying the following information regarding the intended recipients of text messages, (i)

18     their name, email and phone numbers, and (ii) the sources where Bank of America obtained the

19     telephone numbers that it sent the subject text messages to; (13) documents identifying the phone

20     number for every one of the subject text messages sent by Bank of America, or on Bank of America's

21     behalf, including but not limited transmission reports or logs; (14) documents concerning the manner in

22     which the telephone numbers to which text messages were sent were acquired and compiled, and the

23     identify of the persons who acquired and compiled them; (15) documents identifying the total number

24     of the subject text messages sent by Bank of America or on Bank of America's behalf; (16) all documents

25     supporting any contention by Bank of America that Bank of America obtained the express consent,

26     and/or the express written consent of the intended recipient of the subject text messages; (17)

27     documents concerning the creation, content, or transmission of the subject text messages; (18) all

28

documents concerning the computer or devise used to transmit the subject text messages; (19) documents concerning contracts or agreements between Bank of America and any third party regarding the subject text messages; (20) documents concerning any third party transmission of the subject text messages on Bank of America's behalf; (21) documents or communications Bank of America received claiming that Bank of America violated the TCPA, 47 U.S.C. § 227, *et seq.*; and (22) documents concerning any internal investigation conducted by Bank of America or on Bank of America's behalf concerning complaints regarding violations of the TCPA, 47 U.S.C. § 227, *et seq.*

Below, Bank of America proposes that discovery should be bifurcated between individual and class discovery. Plaintiff opposes Bank of America's request for bifurcated discovery because individual and class discovery substantially overlap, and bifurcation would cause unnecessary delay and prejudice to Plaintiff and the Court. As this Court has noted, generally, motions to stay or alter the sequence of discovery "are disfavored because discovery stays may interfere with judicial efficiency and cause unnecessary litigation in the future." *Otey v. CrowdFlower, Inc.*, Case No. 12-cv-05524-JST, 2013 WL 1915680, at *1 (N.D. Cal. May 8, 2013) (quoted authority omitted) (denying motion to bifurcate individual and class discovery). *See also Imran v. Vital Pharmaceuticals, Inc.*, Case No. 18-cv-5758-JST, Doc. 68 at 2 (N.D. Cal. Sept. 4, 2019) ("This Court generally does not favor bifurcated discovery in a putative class action."). This Court considers the following factors in deciding whether to bifurcate discovery in a putative class action prior to certification: "(1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at 'an early practicable time,' (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery." *True Health Chiropractic Inc. v. McKesson Corp.*, Case No. 13-cv-02219-JST, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015) (declining to bifurcate individual and class discovery in TCPA action) (citing 1 McLaughlin on Class Actions § 3:10).

First, on the issue of overlap, all but four of the above categories of discovery pertain to both Plaintiff individually and the putative class. The substantial overlap between individual and class discovery weighs against bifurcation.

1         Second, given the substantial overlap in individual and class discovery, bifurcating discovery

2    would result in class certification being unnecessarily delayed, contrary to Rule 23(c)(1)(A). Bifurcating

3    discovery would cause unnecessary complication and create potential disputes over the parameters of

4    class and individual discovery. Thus, declining to bifurcate discovery would serve judicial economy. *See*

5    *True Health*, 2015 WL 273188, at *2 ("[B]ifurcation could raise a slew of issues as to what discovery

6    relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the

7    distinction between the two."); *In re Rail Freight Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C.

8    2009) ("Bifurcated discovery fails to promote judicial economy when it requires ongoing supervision of

9    discovery. If bifurcated, this Court would likely have to resolve various needles disputes that would arise

10   concerning the classification of each document . . .").

11        Finally, "it is more likely that Plaintiff will be prejudiced by bifurcation than Defendant will be

12   prejudiced by unitary discovery." *Imran*, Case No. 18-cv-5758-JST, Doc. 68 at 3 (denying defendant's

13   request for bifurcated discovery). Bank of America will not be prejudiced by having to participate in

14   individual and class discovery simultaneously. By comparison, if individual and class discovery are

15   bifurcated, both parties will be prejudiced by prolonged fact discovery and possible disputes over the

16   parameters of phased discovery. Because each of the major factors this Court considers in determining

17   whether to bifurcate individual and class discovery weigh against bifurcation, Plaintiff opposes Bank of

18   America's request for bifurcated discovery. *True Health Chiropr. Inc.*, 2015 WL 273188 at *1.

19       **(b)**    **Defendant:**

20        Bank of America believes that discovery in this case should be bifurcated, given that summary

21   judgment on Plaintiff's individual claims can resolve her claims efficiently and quickly, without bringing

22   in disputes over records involving many of the Bank's other sixty million (60,000,000) customers in the

23   United States—records containing personally identifiable information that the Bank is required, under

24   federal statute, to protect.  Thus, should the case move forward and not be stayed to await the ruling in

25   *Barr*, discovery should be limited to Plaintiff's individual claims.  And, only if Plaintiff can establish that

26   the text messages she individually received from Bank of America could be actionable under the TCPA,

27   should a second stage of discovery proceed as to the class allegations.  *See* Fed. R. Civ. P. 26(b)(1). "The

28

parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." In a class action case, "[p]recertification discovery lies entirely within the court's discretion." *Doherty v. Comenity Capital Bank & Comenity Bank, No.* 16CV1321-H-BGS, 2017 WL 1885677, at *3 (S.D. Cal. May 9, 2017) (citing Fed. R. Civ. P. 23).

As to Plaintiff's individual claims, Bank of America needs discovery on the following subjects, among others: (1) Plaintiff's consent to be contacted by Bank of America on her cellular telephone; (2) attempts by Plaintiff or someone acting on her behalf to access her online profile with Bank of America; (3) any alleged injury Plaintiff asserts; and (4) whether Plaintiff provided other persons or entities with access to her online bank information. Defendant intends to issue written discovery to and depose Plaintiff.

As to the class action allegations, Bank of America would need the following discovery from Plaintiff to oppose Plaintiff's motion for class certification: (1) identity and contact information of the individuals cited to in her Complaint who posted complaints on a Facebook page about allegedly received unsolicited text messages from Bank of America; (2) their efforts to solicit information from Bank of America; (2) their consent to be contacted by Bank of America on their cellular telephone; (3) whether they had an online profile with Bank of America; (4) attempts by these individuals to access accounts/online profile with Bank of America; and (5) whether other persons had access to their online bank information.

**9.     Class Actions**

**(a)     Plaintiff:** Plaintiff seeks to represent the following class:

All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message through the use of any automatic telephone dialing system or an artificial or prerecorded voice, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, without emergency purpose and without the recipient's prior express consent. Defendant and its employees or agents are excluded from the Class.

**(b)     Defendant:**

Defendant denies that Plaintiff's proposed class is an appropriate class definition, denies that class certification is appropriate in this matter, and denies the alleged numerosity of the proposed class.

10.   **Related Cases:**

The Parties are not aware of any related cases.

11.   **Relief**

(a)     **Plaintiff** seeks: (a) Injunctive relief prohibiting such violations of the TCPA by Bank of America in the future; (b) for herself and each member of the proposed classes treble damages, as provided by statute, of up to $1,500.00 for each and every call that violated the TCPA; (c) for herself and each member of the proposed classes $500.00 in statutory damages for each and every call that violated the TCPA; (d) an award of attorneys' fees and costs to counsel for Plaintiff and the proposed Class; (e) an order certifying this action to be a proper class action pursuant to *Federal Rule of Civil Procedure* 23, establishing an appropriate Class, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and the law firms representing Plaintiff as counsel for the classes; and (f) such other relief as the Court deems just and proper.

(b)     **Defendant**

Bank of America denies that Plaintiff or any putative class member suffered actual damages from the OTP texts that Plaintiff and/or putative class members received, and further denies that the intent of the TCPA was to encompass such communications or to establish per-call statutory damages that would apply to text messages.  Bank of America also denies that injunctive relief is proper in this case given the lack of facts to demonstrate likelihood of future harm from OTP texts, which are focused an ensuring the safety of customers and their financial records, and without which millions of customers each month would not be able to verify their identities in a simple and quick procedure to regain or validate access to their bank accounts.

12.   **Settlement and ADR:**

The parties have not yet discussed resolution of this matter through ADR, given that Plaintiff is not interested in individual settlement at this time, and Defendant is not interested in class settlement at this time.

The parties propose using private mediation.

**13.**     **Consent to Magistrate Judge for All Purposes:**

The parties do not consent to assignment of this case to a magistrate judge.

**14.**     **Other References:**

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**15.**     **Narrowing of Issues**

**(a)     Plaintiff:**

This case is still in its initial stages. After Plaintiff has conducted initial discovery, the parties will be in a better position to determine if issues can be narrowed by agreement or motion. Plaintiff opposes Defendant's request for bifurcated discovery, discussed in Section 8(a), *supra*.

**(b)     Defendant:**

Bank of America contends that discovery in this case should be bifurcated, as detailed above, with individual discovery into Plaintiff's own claims first.  Plaintiff must first establish that the text messages she received could be actionable under the TCPA.  If Plaintiff prevails, and only then, she can conduct discovery as to the putative class.

However, before **any** discovery commences, the Court should stay this litigation to await the determination by the U.S. Supreme Court in *William P. Barr et al. v. American Association of Political Consultants, Inc.*, No. 19-361, in which the constitutionality of the TCPA under the First Amendment is at issue.  The court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which near upon the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  Because the Supreme Court is considering whether the portion of the TCPA found unconstitutional by the Fourth Circuit (and the Ninth Circuit as well) can indeed be severed from Section 227(b) of the TCPA, or whether the TCPA is instead unconstitutional under the First Amendment, this litigation should be stayed to await the Supreme Court's determination.[5]

*///*

---

[5] While so far, the Supreme Court has only accepted review of the Fourth Circuit's ruling, the same reasoning was employed by the Ninth Circuit in *Gallion v. United States*, 772 F. App'x. 604 (9th

**16.**   **Expedited Trial Procedure:**

The parties do not believe that an expedited schedule is appropriate for this case.

**17.**   **Scheduling**

**(a)**   **Plaintiff** proposes the following schedule and opposes Defendant's request for bifurcated discovery, discussed in Section 8(a), *supra*:

| | |
|---|---|
| Plaintiff's motion for class certification, and any expert reports Plaintiff intends to use in support of class certification, to be filed and served. | August 21, 2020 |
| Defendant's opposition to class certification, and any expert reports Defendant intends to use in opposition to class certification, to be filed and served. | September 18, 2020 |
| Plaintiff's reply in support of class certification, and any rebuttal expert reports, to be filed and served. | October 16, 2020 |
| Hearing on class certification | TBD |
| Parties' expert designations on issues other than class certification, including expert reports and information required by Fed. R. Civ. P. 26(a)(2), to be served. | February 5, 2021 |
| Parties' rebuttal expert designations on issues other than class certification, including expert reports and information required by Fed. R. Civ. P. 26(a)(2), to be served. | March 8, 2021 |
| Discovery cutoff | April 9, 2021 |
| Last day to file dispositive motions<br>Last day to file *Daubert* motions | June 25, 2021 |

**(b)**   **Defendant:**

As noted above, Defendant believes that this action should be stayed. Defendant should not be required to defend itself in a putative class action when the Supreme Court will be deciding this term a central issue of whether Plaintiff's claims are being brought under a statute that is unconstitutional.

However, if the Court does not stay the action *sua sponte* at the Case Mangement Conference or after reviewing Defendant's Motion, then Defendant would propose the following schedule for

---

Cir. 2019), in which the Ninth Circuit held that the TCPA's exception allowing for autodialed calls if "made solely to collect a debt owed to or guaranteed by the United States," 42 U.S.C. § 227(b)(1)(A)(iii), is unconstitutional. The *Gallion* court reasoned that the provision "is a content-based speech regulation" that fails the rigorous constitutional test for restrictions on speech. The court, however, did not strike down the entirety of the TCPA under the First Amendment, instead opting like the Fourth Circuit to sever the unconstitutional provision from the statute.

bifurcated discovery.  Because later dates would not be appropriate to establish absent a ruling on the proposed early, individual MSJ, Defendant provides estimates below.

| Discovery cut-off for Plaintiff's **individual** claims | July 31, 2020 |
|---|---|
| Defendant's motion for summary judgment (Plaintiff's **individual** claims) | August 28, 2020 |
| Discovery (class) [if Plaintiff successfully opposes the Bank's MSJ] begins | 15 days after ruling on MSJ |
| Plaintiff's motion for class certification, and any expert reports Plaintiff intends to use in support of class certification, to be filed and served. | 150 days after ruling on MSJ |
| Defendant's opposition to class certification, and any expert reports Defendant intends to use in opposition to class certification, to be filed and served. | 195 days after ruling on MSJ |
| Plaintiff's reply in support of class certification, and any rebuttal expert reports, to be filed and served. | 210 days after ruling on MSJ |
| Hearing on class certification | 240 days after ruling on MSJ |
| Parties' expert designations on issues other than class certification, including expert reports and information required by Fed. R. Civ. P. 26(a)(2), to be served. | TBD |
| Parties' rebuttal expert designations on issues other than class certification, including expert reports and information required by Fed. R. Civ. P. 26(a)(2), to be served. | TBD |
| Discovery cutoff | TBD |
| Last day to file dispositive motions<br>Last day to file *Daubert* motions | TBD |

**18.    Trial:**

Plaintiff demanded a jury trial. Plaintiff estimates trial to last approximately two weeks.

Defendant estimates a trial of one day (should a class not be certified), and a trial of two weeks (should a class be certified).

**19.    Disclosure of Non-Party Interested Entities or Persons**

**(a)      Plaintiff:**

Plaintiff knows of no non-party interested entities or persons.

1
    **(b)**    **Defendant:**

2
Bank of America knows of no non-party interested entities or persons.

3
**20.**    **Professional Conduct:**

4
All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct

5
for the Northern District of California.

6
**21.**    **Other:**

7
The parties are not presently aware of any other matters that may facilitate the just, speedy, and

8
inexpensive disposition of this matter.

9
Dated: January 28, 2020          **TYCKO AND ZAVAREEI LLP**

10
By: */s/ Annick M. Persinger*
Annick M. Persinger (SBN 272996)

11
Maren I. Christensen (SBN 320013)
apersinger@tzlegal.com

12
mchristensen@tzlegal.com
1970 Broadway, Suite 1070

13
Oakland, CA 96612
Telephone (510) 254-6808

14
Facsimile (202) 973-0950

15
Hassan A. Zavareei (SBN 181547)
hzavareei@tzlegal.com

16
1828 L Street, NW, Suite 1000
Washington, DC 20036

17
Telephone (202) 973-0900
Facsimile (202) 973-0950

18

19
**TERRELL MARSHALL LAW GROUP PLLC**

20
Beth E. Terrell (SBN 178181)
Jennifer R. Murray (*pro hac vice*)

21
bterrell@terrellmarshall.com
jmurray@terrellmarshall.com

22
936 North 34th Street, Suite 300
Seattle, WA 98103

23
Telephone (206) 816-6603
Facsimile (206) 319-5450

24
*Attorneys for Plaintiff*

25

26

27

28

1

Dated:  January 28, 2020

**SNELL & WILMER LLP**

2

By: _____ */s/ Becca Wahlquist* _____
Becca J. Wahlquist (SBN 215948)

3

bwahlquist@swlaw.com
350 S. Grand Avenue, Suite 3100

4

Los Angeles, CA 90071
Telephone (213) 929-2500

5

Facsimile (213) 929-2525

6

*Attorneys for Defendant*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## SIGNATURE CERTIFICATION & CERTIFICATE OF SERVICE

2
3
4

Pursuant to Local Rule 5-1(i)(3), I hereby attest that concurrence in the filing of the document has been obtained from Defendant's counsel Becca Wahlquist, and that I have her authorization to affix her electronic signature to this document.

5
6
7

Further, I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to any indicated as non-registered participants.

8
9

Dated: January 28, 2020                  */s/ Annick M. Persinger*
                                          Annick M. Persinger

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28